UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CUMBERLAND PHARMACEUTICALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12 C 3846 |
| ) | |
| MYLAN INSTITUTIONAL LLC, and MYLAN INC., ) | Judge Rebecca R. Pallmeyer |
| ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cumberland Pharmaceuticals, Inc. brought this patent infringement suit against Defendants Mylan Institutional, LLC and Mylan, Inc. (collectively "Mylan") for infringement of United States Patent No. 8,148,356. Mylan asserted affirmative defenses and counterclaims [31] alleging, *inter alia*, that the '356 patent is unenforceable because of Cumberland's inequitable conduct before the United States Patent and Trademark Office. Cumberland now moves pursuant to Rules 12(f) and 12(b)(6) to strike Mylan's inequitable conduct defense and dismiss the counterclaim for failure to plead with the particularity required by Rule 9(b), and failure to state a claim upon which relief can be granted. For the reasons set forth below, Cumberland's motion to dismiss [33] is granted in part and denied in part.

**BACKGROUND**

Plaintiff Cumberland Pharmaceuticals, Inc. manufactures and sells Acetadote, an intravenous drug formulation of N-acetylcysteine[1] ("NAC"), used to treat suspected acetaminophen overdoses. (Pl.'s Mem. [34] at 3.) The patent-in-suit, which issued on April 3, 2012, "relates to

---

[1] Cysteine is a sulfur-containing nonessential amino acid produced by the enzymatic or acid hydrolysis of proteins. The N-acetyl derivative of l-cysteine is used as a mucolytic agent for adjunct therapy in bronchopulmonary disorders to reduce the viscosity of mucus and facilitate its removal, administered by instillation or nebulization; and as an antidote for acetaminophen poisoning, administered orally or intravenously. DORLAND'S MEDECAL DICTIONARY, (Nov. 14, 2010), http://dorlands.com/def.jsp?id=100026900, http://www.dorlands.com/def.jsp?id =100037232.

novel acetylcysteine compositions in solution, comprising acetylcysteine and which are substantially free of metal chelating agents, such as EDTA."[2] (U.S. Patent No. 8,148,356, Ex. 1 to Pl's Compl., at 1.) According to Cumberland, Acetadote is a "commercial embodiment encompassed by the patent-in-suit." (Pl.'s Compl. [1] ¶ 10.)

Cumberland first sought the Food and Drug Administration's ("FDA") approval of Acetadote in June 2002, when it filed New Drug Application ("NDA") No. 21-539. (Defs.' Opp'n [45] at 2.) On January 23, 2004, the FDA approved Acetadote as an "orphan drug."[3] (*Id.*) Because of Acetadote's status as an orphan drug, Cumberland enjoyed a seven-year period of exclusivity during which it faced no competition in the market. 21 U.S.C. § 360cc.

On August 24, 2005, Cumberland filed patent application no. 11/209,804 (the "'804 patent application"). (U.S. Patent No. 8,148,356 at 1.) Leo Pavliv ("Pavliv") is the named inventor on the '804 patent application (*id.*), and he is the individual named in all of Mylan's inequitable conduct allegations. (Defs.' Am. Answer to Compl. for Patent Infringement, Separate Defenses, and Countercls. [31] (hereinafter "Defs.' Am. Answer and Countercls.") Fourth Defense ¶¶ 1-39, Count III ¶ 22.) As Cumberland's Senior Vice President of Operations, Pavliv had allegedly overseen all aspects of drug development, including the development of Acetadote. Mylan alleges that Pavliv supplied the FDA with prior art references, and was aware of documents issued by both Cumberland and the FDA in connection with NDA No. 21-539, which, according to Mylan, should have been before the United States Patent and Trademark Office ("PTO") during the prosecution of the application from which the '356 patent issued. (*Id.* ¶¶ 7-9, 14, 18, 22.) He is also alleged to

---

[2] Edetic (ethylenediaminetetraacetic) acid. Salts of EDTA are used as chelating agents for direct treatment of metal poisoning because they bind the toxic metal ions more strongly than do the vulnerable components of the living organism. BRITANNICA ACADEMIC EDITION (Nov. 14, 2010), http://www.britannica.com/EBchecked/topic/108427/chelate?anchor=ref49109.

[3] Orphan drugs are products used to treat diseases or afflictions that are rare (affecting less than 200,000 people in the United States per year). See 21 U.S.C. §§ 360bb(a)(2), 360cc(a).

have conducted and directed experiments related to various aspects of the Acetadote formulation, and submitted the results as well as three declarations to the PTO to overcome examiner rejections to patentability of the '804 patent application. (*Id.* ¶¶ 4, 24, 34, 38.)

In December 2011, Mylan filed Abbreviated New Drug Application ("ANDA") No. 20-3624 seeking FDA approval of a generic version of Acetadote. (Defs.' Opp'n at 2.) Soon afterwards, on April 3, 2012, United States Patent No. 8,148,356 (the "'356 patent") issued from the '804 patent application. (U.S. Patent No. 8,148,356; Defs.' Opp'n at 2.) Mylan subsequently provided the FDA with a certification under 21 U.S.C. § 355(j)(2)(A)(vii) ("Paragraph IV certification") that its ANDA product does not infringe upon any valid claim of the '356 patent. (Defs.' Opp'n at 2.) Mylan also sent notice of the Paragraph IV certification to Cumberland. (*Id.*) On May 18, 2012, Cumberland filed a Citizen Petition with the FDA requesting that the FDA not approve any ANDA for Acetadote if the generic drug product includes EDTA in its formulation. (Citizen Petition, Ex. 2 to Defs.' Opp'n at 2.)

Cumberland filed the instant suit for infringement on May 17, 2012, pursuant to the Hatch Waxman Act, 21 U.S.C. § 355(j)(B)(iii), alleging that Mylan's filing of its ANDA with a Paragraph IV certification constituted an act of infringement of the '356 patent under 35 U.S.C. § 271(e)(2)(A). (Pl's Compl.; Pl.'s Mem. at 3.) In an amended answer filed on July 30, 2012, Mylan asserted an inequitable conduct affirmative defense ("Fourth Defense") and an inequitable conduct counterclaim ("Count III") which incorporates the allegations from the Fourth Defense by reference. (See Defs.' Am. Answer and Countercls. at 9-18, 21-23.) Cumberland has moved to strike Mylan's Fourth Defense and dismiss Count III pursuant to Rules 12(f) and 12(b)(6) for failure to plead with the particularity required by Rule 9(b), and failure to state a claim upon which relief can be granted. (Pl.'s Mot. to Dismiss [33] at 1; Pl.'s Mem. at 1.)

**DISCUSSION**

**I.      Standard of Review**

Although this is a patent case, dismissal of a claim under Rule 12(b)(6) is a matter of procedure, and as such, the Seventh Circuit's Rule 12(b)(6) standard applies. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009) (citation omitted); *see also Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). That standard is familiar: "[a] motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (citation and quotation omitted). When ruling on a Rule 12(b)(6) motion to dismiss, the court treats all well-pleaded allegations as true, and draws all reasonable factual inferences in favor of the plaintiff. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

To survive a Rule 12(b)(6) motion, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On the other hand, the claim "need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Indep. Trust Corp.*, 665 F.3d at 935 (quoting *Twombly*, 550 U.S. at 556).

Cumberland's motion to strike Mylan's defenses under Rule 12(f) is governed by a different standard. Rule 12(f) allows the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The court "has considerable discretion" in striking such material. *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133,

1141 (7th Cir. 2009). Striking defenses under Rule 12(f) is generally disfavored, although such motions may be granted if they remove unnecessary clutter and serve to expedite, not delay the case. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

## II.     Inequitable Conduct and Rule 9(b)

Each individual involved with the filing and prosecution of a patent application is subject to a duty of candor, good faith, and honesty in dealing with the U.S. Patent and Trademark Office ("PTO"). *Honeywell Intern. Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007); *see also* 37 C.F.R. § 1.56(a). The inequitable conduct defense may render a patent unenforceable where the patentee has breached this duty of candor. *Honeywell*, 488 F.3d at 999. The two substantive elements of an inequitable conduct claim are materiality and intent. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). Thus, to prevail on its inequitable conduct claim, Mylan must show that Cumberland: (1) made an affirmative misrepresentation of material fact, submitted false material information, or failed to disclose material information; and (2) intended to deceive the PTO. *See Rentrop v. Spectranetics Corp.*, 550 F.3d 1112, 1119 (Fed. Cir. 2008); *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1314 (Fed. Cir. 2008).

The circumstances constituting inequitable conduct must be pleaded with particularity under Rule 9(b). *Exergen*, 575 F.3d at 1326 (citation omitted); see also FED. R. CIV. P. 9(b). While the Rule 12 inquiry calls for application of Seventh Circuit law, the question of whether an inequitable conduct claim satisfies Rule 9(b)'s heightened pleading requirement is governed by Federal Circuit law. *Id.* at 1318. In *Exergen Corp. v. Wal-Mart Stores, Inc.*, the Federal Circuit held that Rule 9(b) requires identification of the "specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." 575 F.3d at 1327. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326-27 (citation omitted).

### A.     Pleading Materiality

As noted above, Rule 9(b) requires a party pleading inequitable conduct to identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. An allegation of inequitable conduct must "name the specific individual associated with the filing or prosecution of the application issuing as the [subject] patent, who both knew of the material information and deliberately withheld or misrepresented it." *Id.* at 1329 (citation omitted). The allegation must also identify "which claims, and which limitations in those claims, the withheld references [or misrepresentations] are relevant to[.]" *Id.* (citation omitted). Further, the allegation must identify "where in those references the material information is found." *Id.* (citation omitted). Finally, an inequitable conduct allegation must identify how the alleged misrepresentation or omission is material to patentability. For a withholding claim, the claimant must explain "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329-30 (citation omitted).

Cumberland takes issue with the manner in which Mylan pleaded how the alleged misrepresentations and omissions are material to patentability. (Pl.'s Mem. at 7.) Cumberland claims that Mylan relies solely on conclusory assertions regarding how and why the withheld information would have affected the PTO's allowance of the '356 patent (*id.*), that Mylan has failed to explain why the withheld information is not cumulative (Pl.'s Reply at 2-3), and that Mylan "fails to specify to which claims and/or limitation of each claim the references are allegedly material." (Pl.'s Mem. at 4.)

Mylan's Amended Answer and Counterclaims makes six specific allegations of inequitable conduct by inventor Leo Pavliv: (1) misrepresentation of and failure to disclose to the PTO information regarding prior use of intravenous NAC for the treatment of acetaminophen poisoning (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 7-13); (2) failure to disclose that the FDA required Cumberland to investigate whether EDTA could be reduced or removed from the

Acetadote formulation (*id.* ¶¶ 14-17); (3) failure to disclose prior art previously submitted to FDA (*id.* ¶¶ 18-21); (4) failure to disclose that the then-marketed formulation of Acetadote was identical to the claimed formulation with the exception of the absence of EDTA (*id.* ¶¶ 22-23); (5) misrepresentations regarding the NAC concentration and stability that contradict information in the FDA Chemistry Review (*id.* ¶¶ 24-30); and (6) misrepresentations regarding pH and stability that contradict information in the FDA Chemistry Review. (*Id.* ¶¶ 31-39.) For the purpose of discussing the sufficiency of the allegations, the court will address each alleged instance of inequitable conduct in turn.

### 1. Misrepresentation of, and failure to disclose, information regarding prior use of intravenous NAC for the treatment of acetaminophen poisoning

The first allegation identifies three documents that Cumberland allegedly failed to disclose to the PTO: Chemistry Review, Statistical Review, and Medical Review, all issued by the FDA in 2002 and 2003 in connection with NDA No. 21-539. Each of these documents recognizes that intravenous NAC formulations have been used to treat acetaminophen poisoning in the United States and other countries. (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 7-10.) According to Mylan, the Chemistry Review also discloses that some of these NAC formulations were identical to the Acetadote formulation described in NDA No. 21-539. (Defs.' Am. Answer and Countercls., Fourth Defense ¶ 7; Defs.' Opp'n at 3.) The withheld information is material, Mylan asserts because it would have affected patentability by "anticipat[ing] and/or render[ing] obvious each and every claim of the '356 patent." (Defs.' Am. Answer and Countercls., Fourth Defense ¶ 11.) Mylan also asserts that Pavliv misrepresented to the PTO that Acetadote "was the first and only intravenous injection of acetylcysteine in the United States." (*Id.* ¶ 12.) Mylan suggests that this statement is contradicted by the withheld information, and was made with the specific intent to deceive the PTO. (*Id.* ¶ 13.)

The allegation satisfies the "who" requirement by identifying Pavliv, who allegedly knew of

7

the material information and deliberately withheld and misrepresented it. (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 7-9.); *see Exergen*, 575 F.3d at 1327. The allegation also satisfies the "where" requirement by specifically identifying the references (Chemistry Review, Statistical Review, and Medical Review) and where in those references the material information is found. *Exergen*, 575 F.3d at 1327. Mylan does so by quoting from each document. (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 7-9.) Mylan has not cited the page number where the material information is to be found in every instance; however, specific page references are not required at the pleading stage. *See Pollin Patent Licensing, LLC v. Capital One Auto Fin., Inc.*, No. 10 CV 07420, 2011 WL 5118891, at *2 (N.D. Ill. Oct. 25, 2011). By quoting from the withheld references, Mylan sufficiently identifies the material content, and gives Plaintiff fair notice of the basis for the inequitable conduct defense.

Cumberland argues that Mylan "fails to specify to which claims and/or limitations of each claim the references are allegedly material." (Pl.'s Mem. at 4.) The allegation does not list individual claims or claim limitations to which the information above is relevant, but instead alleges that this information is material because it would "anticipate and/or render obvious each and every claim of the '356 patent." (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 10, 13.) In support of this assertion, Mylan claims that the prior NAC formulations referred to in the withheld documents are identical to the NDA formulation of Acetadote. (Defs.' Am. Answer and Countercls., Fourth Defense ¶ 7; Defs.' Opp'n at 3.) Mylan alleges further that the "Acetadote® product practices the invention claimed by the '356 patent." (Defs.' Am. Answer and Countercls., Fourth Defense ¶ 6.) Indeed, the existence of identical NAC formulations that predate, and were used for the same purpose as, the '356 patent would be relevant to each claim and each claim limitation. Under these circumstances, requiring Mylan to list each individual claim would be blind formalism. The allegation meets the "what" requirement.

Cumberland also argues that Mylan has failed to explain how or why the withheld

information would have affected the PTO's allowance of the '356 patent (Pl.'s Mem. at 7), and why the withheld information is not cumulative, (Pl.'s Reply at 2-3.) In *Exergen*, the deficient pleading merely stated that the withheld references were "material" and "not cumulative to the information already of record." *Exergen*, 575 F.3d at 1329. The defendant in that case had not alleged any facts to explain both "'why' the withheld information is material and not cumulative, [or] 'how' an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329-30. *Exergen* teaches, further, that a simple allegation that the withheld information is not cumulative is not sufficient to plead materiality. 575 F.3d at 1329. Cumberland also cites *Itex, Inc. v. Westex, Inc.*, No. 05 CV 6110, 2010 WL 2901793 (N.D. Ill. Jul. 21, 2010) in support of its argument. (Pl.'s Reply at 2-3.) In *Itex*, the court found an inequitable conduct pleading deficient where it simply alleged that "a reasonable examiner would have considered these facts important to the patentability of at least one claim of the [subject] patent." 2010 WL 2901793, at *6. Mylan's allegation in this case reaches beyond the conclusory allegations at issue in *Exergen* and *Itex*. Mylan has put Cumberland on notice as to what information should have been before the patent examiner and how that information would have changed the examiner's decision regarding the patentability of the claims in the '356 patent. Mylan's pleading goes further by explaining that the information would affect patentability by anticipating and/or rendering obvious all claims.

By asserting that the withheld information would anticipate and/or render obvious each and every claim of the '356 patent, Mylan is clearly alleging that the patent application would not have been granted had the information been disclosed. *See Pollin Patent Licensing, LLC v. Capital One Auto Fin., Inc.*, No. 10 CV 07420, 2011 WL 5118891, at *3 (N.D. Ill. Oct. 25, 2011) (allegation that a patent application would not have been granted had withheld information been disclosed was sufficient to properly plead materiality.). Based on these allegations, the court can reasonably infer that the undisclosed information was not cumulative of the information before the PTO. *See Bone Care Int'l v. Pentech Pharm.*, No. 08 CV 1083, 2010 WL 1655455, at *6 (N.D. Ill. Apr. 23, 2010)

(allegation that the PTO would not have granted the application necessarily implies that the information was not cumulative of materials already before the PTO.). Thus, the allegation meets the "how" requirement.

Cumberland also raises arguments concerning whether Pavliv actually made the alleged misrepresentation and whether the misrepresentation would actually affect patentability. (Pl.'s Mem. at 8, 9; Pl.'s Reply at 6.) Such arguments test the merits of the claim and are inappropriate at the pleading stage. The court treats all well-pleaded allegations as true, and draws all reasonable factual inferences in favor of the plaintiff. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). Plaintiff's motion is denied with respect to the allegations contained in paragraphs 7 through 13 of Mylan's Fourth Defense.

### 2. Failure to disclose that the FDA required Cumberland to investigate reduction or removal of EDTA from the original Acetadote formulation

The second allegation identifies a Citizen Petition that Cumberland submitted to the FDA in which Cumberland acknowledged that the "FDA required that Cumberland, in a Phase IV post-marketing commitment, investigate whether EDTA could be reduced or removed from the Acetadote formulation." (Defs.' Am. Answer and Countercls., Fourth Defense ¶ 14.) In its opposition to the motion, Mylan explains further that the FDA requested that Cumberland remove EDTA from its formulation, and that due to "well known safety and side effect issues related to EDTA," the FDA conditioned approval of NDA No. 21-539 on Cumberland's conducting studies comparing formulations with less or no EDTA. (Defs.' Opp'n at 4.) Mylan alleges that Cumberland did not disclose that reduction and/or removal of EDTA in its NAC formulation was required by the FDA. (*Id.* ¶ 17.)

Here too, the allegation satisfies the "who" requirement by identifying Pavliv, who allegedly knew of the material information and deliberately withheld and misrepresented it. (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 14-17.) Mylan has also satisfied the "where"

10

requirement by identifying the document and page number where the withheld information is to be found. (*Id.* ¶ 14.) Cumberland argues that Pavliv could not have been aware of the Citizen Petition, as it was created after the issuance of the '356 Patent. (Pl.'s Reply at 6 n. 1.) As the court understands the Citizen Petition, however, the information cited in that Petition refers to actions taken by the FDA in connection with the approval of NDA No. 21-539, which preceded the '804 patent application. (See Citizen Petition at 2-3.) Mylan is alleging that the *information* contained in the Citizen Petition, not the Petition itself, is what should have been disclosed to the PTO.

Like the first allegation, this allegation does not list individual claims or claim limitations to which the information above is relevant, but instead alleges that the withheld information is material to all claims of the '356 patent. (Defs.' Am. Answer and Countercls., Fourth Defense ¶ 15.) All of the claims in '356 patent contain a limitation regarding the mass concentration of EDTA or pharmaceutically acceptable salts thereof, either directly or by reference. (U.S. Patent No. 8,148,356 at 6.) If the EDTA mass concentration is a feature that makes the '356 patent's NAC formulation novel, the allegation that the reduction or elimination of EDTA was not Pavliv's invention is relevant to the EDTA mass concentration limitation in every claim. Thus, this allegation is sufficient to put Cumberland on notice regarding the claims and the claim limitations to which the withheld information is relevant.

Cumberland also argues that Mylan has "failed to show how the information could have changed the examiner's decision regarding patentability of the claims . . . ." (Pl.'s Reply at 6 n. 1.) Cumberland confuses pleading with proving. At this stage, Mylan is not required to show anything, but need only present allegations that explain "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-30. Mylan alleges that the withheld information would "anticipate and/or render obvious each and every claim of the '356 patent." (Defs.' Am. Answer and Countercls., Fourth Defense ¶ 15.) For the reasons explained earlier, the court is satisfied that this

allegation explains how the examiner would have used the undisclosed information and how the information would have affected patentability. Further, the allegation implies that the information was not already before the PTO. Plaintiff's motion is denied with respect to the allegations contained in paragraphs 14 through 17 of Mylan's Fourth Defense.

### 3. Failure to disclose prior art submitted to the FDA

In the third allegation, Mylan identifies 19 pieces of prior art that Pavliv allegedly disclosed to the FDA in connection with NDA No. 21-539, but did not disclose to the PTO. (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 18, 21.) This allegation, like the ones addressed previously, satisfies the "who" requirement by identifying Pavliv. The allegation fails to satisfy the "where" requirement, however, because it does not specify any teachings contained in the prior art references that were also absent from the record before the PTO. *Exergen*, 575 F.3d at 1329. Mylan alleges only that the prior art "describ[es] the general pharmacokinetics[4] (PK) of acetylcyteine." (Defs.' Am. Answer and Countercls., Fourth Defense ¶ 19.) Nor has Mylan identified any specific claims or claim limitations to which the withheld references are relevant. The *Exergen* court explained that "[s]uch allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." 575 F.3d at 1329-30. Mylan instead alleges generally that the references would have affected patentability by "anticipat[ing] and/or render[ing] obvious each and every claim of the '356 patent either separately or in combination with other prior art." (Defs.' Am. Answer and Countercls., Fourth Defense ¶ 20.) Unlike the allegations discussed in the preceding sections, here it is not clear to the court how the withheld references are relevant to all claims of the '356 patent. If Mylan contends that each one of these references, either individually

---

[4] Pharmacokinetics are characteristic interactions of a drug and the body in terms of its absorption, distribution, metabolism, and excretion. MERRIAM-WEBSTER.COM (Nov. 14, 2012), http://www.merriam-webster.com/dictionary/pharmacokinetics.

or in some combination, teach all of the claims of the '356 patent, its allegation that these references teach the general pharmacokinetics of acetylcyteine is inadequate to permit the court to make that inference. Plaintiff's motion is granted with respect to the allegations contained in paragraphs 18 through 21 of Mylan's Fourth Defense.

### 4. Failure to disclose that the then-marketed formulation of Acetadote was identical to the claimed formulation aside from the absence of EDTA

In its fourth allegation, Mylan asserts that information contained within NDA No. 21-539, including experimental data, the Chemistry Review, and the Citizen Petition, allegedly known to Pavliv, should have been before the PTO. (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 22-23.) Mylan asserts that the "Chemistry Review (at page 7) indicates that the original formulation (as detailed in the NDA) and the reformulation are likely to be substantially similar." (*Id.* ¶ 23.) Mylan also asserts that the Citizen Petition states that Cumberland investigated the reduction and removal of EDTA from its NAC formulation at the FDA's insistence. (*Id.*) Mylan again alleges that disclosure of the withheld information would have "rendered each and every claim of the '356 patent anticipated and/or obvious." (*Id.* ¶ 23.)

In short, in allegation 4, Mylan combines allegations 1 and 2, discussed above, asserting that the information regarding the similarity of the prior NAC formulations and the FDA's requirement that Cumberland investigate the reduction or removal of EDTA, would together "have rendered each and every claim of the '356 patent anticipated and/or obvious." (*Id.* ¶ 23.) This allegation is arguably cumulative, but the court finds it sufficient for the same reasons as allegations 1 and 2 discussed above. Plaintiff's motion is denied with respect to the allegations contained in paragraphs 22 through 23 of Mylan's Fourth Defense.

### 5. Misrepresentations regarding NAC concentration and stability that contradict information in the FDA Chemistry Review

Mylan's fifth allegation relates to statements Pavliv made to the PTO to overcome the examiner's objections that prior art anticipated or rendered obvious the claimed NAC concentration

13

limitations. (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 24-30; Defs.' Opp'n at 6.) Mylan alleges that in his Second Declaration, "Pavliv purported to have conducted a test to show that the [NAC] concentration under 200 mg/ml led to higher precipitation and lower stability," and that Pavliv represented to the PTO "that concentrations of acetylcysteine at or under 200 mg/ml is 'a result that is not pharmaceutically acceptable' . . . ." (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 25-26.) Mylan asserts that Pavliv knew that his statements to the PTO were false and/or misleading (*id.* ¶¶ 27, 30), that he knew his statements were material because he made them in response to the examiner's rejection (*id.* ¶¶ 26, 29), and that Pavliv made these false or misleading statements with the intent to deceive the PTO. (*Id.* ¶ 30.) In support of these allegations, Mylan identifies the Clinical Pharmacology Review–a document of which Pavliv was allegedly aware and that he did not disclose to the PTO. (*Id.* ¶¶ 21, 28.) In the Clinical Pharmacology Review, Cumberland was seeking FDA approval of a formulation having the precise NAC concentration (200 mg/ml or 20%) that Pavliv told the PTO produced "a result that is not pharmaceutically acceptable." (*Id.* ¶¶ 26, 28.) Mylan claims that, contrary to the position Pavliv took in his Second Declaration before the PTO, this "original formulation of Acetadote was indeed considered pharmaceutically acceptable and stable upon removal and/or reduction of EDTA." (*Id.* ¶ 28.)

Once again, Mylan satisfies the "who" requirement by identifying Pavliv and the "where" requirement by identifying the alleged misrepresentation and citing the withheld information by document title and page number. (*Id.* ¶¶ 24-26, 28.) Mylan does not list the individual claims or claim limitations to which the information and misrepresentation is relevant by claim number, but does identify the subject matter at issue. Mylan alleges that the undisclosed information and Pavliv's alleged misrepresentations were material to, and used to overcome, these rejections. (*Id.* ¶¶ 24, 26, 29.) Although Mylan has not identified specific claim numbers, the allegation is sufficient to put Cumberland on notice as to the claimed NAC concentration limitations that were the subject

14

of the examiner's rejections. This allegation also satisfies the "how" requirement because the court can reasonably infer that, had the undisclosed information been before the PTO, and/or had Pavliv not made the alleged misrepresentations, the examiner would have stood by his determination to reject the patent application. Plaintiff's motion is denied with respect to the allegations contained in paragraphs 24 through 30 of Mylan's Fourth Defense.

### 6. Representations made to the PTO regarding pH and stability that contradict information in the FDA Chemistry Review

Pavliv allegedly directed and supervised tests concerning the pH of the NAC formulation. (*Id.* ¶ 34.) In his third declaration to the PTO, he reported that "the data show that . . . pH is important to both solubility and stability of acetylcysteine in solution. Acetylcysteine is both unstable, exhibiting a significant increase in degradants, and exhibits lower solubility if the pH is not adjusted to near pH 7." (*Id.*) He also reported that he had "discovered that it is advantageous when both the pH is adjusted to near 7 and the presence of air/oxygen is removed to very low levels in the water and headspace . . . to achieve a stable form of acetylcysteine in solution." (*Id.*) Mylan alleges that the Chemistry Review issued by the FDA in connection with NDA No. 21-539 states that the pH of Acetadote ranged from 6.0 to 7.5. (*Id.* ¶ 31.) Mylan also asserts that the original formulation of Acetadote was considered stable within this broader pH range after the removal and/or reduction of EDTA. (*Id.* ¶ 33.) Mylan alleged that Pavliv intentionally withheld the information regarding the stability of the NAC solution at pH levels between 6 to 7.5, and misrepresented the aforementioned test results to argue to the PTO that "the composition is highly unstable at pH levels that deviate from 7." (*Id.* ¶ 38.)

This allegation satisfies the "who" requirement by identifying Pavliv, and the "where" requirement by identifying the alleged misrepresentation and citing the withheld information by identifying the document and page number. (*Id.* ¶¶ 31, 33-34, 37.) Mylan also satisfies the "what" requirement by identifying the specific claims–1, 3, 4, 7, 8, and 9–to which the alleged omission and

15

misrepresentations are relevant. (*Id.* ¶ 38.) But Mylan makes no assertion regarding how the alleged misrepresentations and omission are material to patentability. Unlike the preceding allegations, in which Mylan explains that the alleged omissions and/or misrepresentations would affect patentability by anticipating claims and/or rendering claims obvious, this allegation is silent. Mylan has not explained "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-30. Plaintiff's motion is granted with respect to the allegations contained in paragraphs 31 through 39 of Mylan's Fourth Defense.

### B. Pleading Scienter

Cumberland argues that Mylan failed to assert "any factual basis whatsoever for its allegations that any individual withheld any information or made misrepresentations with a specific intent to deceive the PTO." (Pl.'s Mem. at 1-2.) Cumberland is correct that where Mylan fails to plead materiality, Mylan also cannot establish the first element of scienter; that a specific individual knew of the withheld *material* information or of the falsity of a *material* misrepresentation. *Exergen*, 575 F.3d at 1328-29. To the extent that Mylan's allegations are sufficient to establish materiality, however, the court is satisfied that the scienter requirement is met, as well.

Rule 9(b) provides that conditions of mind may be alleged generally. FED. R. CIV. P. 9(b); *see also Exergen*, 575 F.3d at 1327. The two relevant conditions of mind of an inequitable conduct claim are knowledge and intent. *Exergen*, 575 F.3d at 1327. To properly plead scienter, there must be "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29. At the pleading stage, the inference of deceptive intent need not be probable; however, it must be plausible based on the facts alleged. *Id.* at 1329 n. 5. (citation omitted).

16

Mylan pleads knowledge and intent only on information and belief. (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 7-18, 20-23, 26-27, 29-32, 37-38, Count III ¶ 22.) Rule 9(b) permits pleading on information and belief "when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330. The court is satisfied that whether the individuals prosecuting the '356 patent had the requisite knowledge or possessed the intent to deceive the PTO falls within the category of information uniquely within another party's control. *Id.*

Moreover, Mylan has offered certain factual allegations that support the inference of Pavliv's knowledge and intent. Pavliv is the named inventor on the '804 patent application. (U.S. Patent No. 8,148,356 at 1.) According to his Second Declaration to the PTO, Pavliv is also Cumberland's Senior Vice President of Operations who oversaw all aspects of drug development, including the development of Acetadote. (Defs.' Am. Answer and Countercls., Fourth Defense ¶¶ 4-5.) More importantly, Pavliv allegedly supplied the FDA with the prior art references referred to in Mylan's inequitable conduct defense and counterclaim, and was aware of the documents issued by both Cumberland and the FDA in connection with NDA No. 21-539. (*Id.* ¶¶ 7-9, 14, 18, 22.) Pavliv also conducted and oversaw experiments related to various aspects of the Acetadote formulation and submitted three declarations to the PTO to overcome multiple examiner rejections. (*Id.* ¶¶ 4, 24, 34, 38.) From these allegations, accepted as true, the court may reasonably infer that Pavliv knew of the withheld information and knew that the information and alleged misrepresentations would have been material to the PTO's examination.

Allegations that the withheld information was known to the applicant and would have been material to the PTO's examination are "sufficient to support an inference of intent to deceive." *Pollin Patent Licensing, LLC v. Capital One Auto Fin., Inc.*, No. 10 CV 07420, 2011 WL 5118891, at *3 (N.D. Ill. Oct. 25, 2011) (citing *CIVIX–DDI v. Hotels.com*, 711 F.Supp.2d 839, 846 (N.D. Ill. 2010)). The inference of intent is bolstered here by allegations that the withheld references were not simply

17

known to Pavliv, but were also previously relied upon by Cumberland and/or the FDA for the approval of the NDA filed for Acetadote.  Cumberland is correct that *Exergen* teaches intent may not be inferred solely from some level of knowledge and materiality.  *Exergen*, 575 F.3d at 1331; (Pl.'s Mem. at 10.)  Moreover, "[t]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct." *Exergen*, 575 F.3d at 1331.  Mylan's allegations reach beyond this deceptive intent threshold, however, by alleging that Pavliv–who had previously relied upon the withheld references–knew of the specific information that is alleged to be material to the patent-in-suit and then deliberately withheld it from the examiner.  *See Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10 CV 204, 2012 WL 1108129, at *8 (N.D. Ill. Apr. 1, 2012).

**CONCLUSION**

Plaintiff's motion to dismiss Defendants' inequitable conduct defense and counterclaim [33] is granted with respect the allegations contained in paragraphs 18 through 21 and 31 through 39 of Defendants' Fourth Defense, and otherwise denied.

ENTER:

Dated: December 14, 2012

_____
REBECCA R. PALLMEYER
United States District Judge